1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DARRAN GRANT,                              No.  2:11-cv-2302 KJM KJN P

12              Plaintiff,

13        v.                                    ORDER and FINDINGS AND
                                                RECOMMENDATIONS
14   WILLIAM KNIPP, et al.,

15              Defendants.

16

17   Introduction

18        Plaintiff is a state prisoner proceeding without counsel.  This civil rights action is

19   proceeding on the complaint filed August 30, 2011.  Defendant Palomares[1] filed a motion for

20   summary judgment, and within plaintiff's statement of undisputed facts, plaintiff included a

21   motion for discovery.  As set forth more fully below, the court denies plaintiff's discovery

22   motion, and recommends that defendant's motion for summary judgment be granted.

23   Plaintiff's Allegations

24        In plaintiff's verified complaint, plaintiff alleges the following:  Late at night on June 18,

25   2010, in Building 11 at MCSP, several inmates overdosed on suspected narcotics, causing the

26   death of one inmate.  (ECF No. 1 at 5.)  As a result, all inmates in Building 11 were evacuated in

27

28   _____
     [1]  Defendant Knipp was dismissed by order filed November 23, 2011.  (ECF No. 11.)

                                                1

1    segments.  During the evacuation, plaintiff was stopped and questioned concerning the incident,

2    and then he was taken to the basketball court along with several dozen inmates.  (ECF No. 1 at 5.)

3        At some point early in the morning of June 19, 2010, plaintiff became involved in a verbal

4    argument[2] with defendant Palomares.  (ECT No. 1 at 6.)  Subsequently, defendant ordered

5    plaintiff to lay on his stomach, or "prone out."  Plaintiff alleges he told defendant that plaintiff has

6    a heart defibrillator and tried to explain that plaintiff could not prone out because of the pressure

7    it would place on plaintiff's heart.  Plaintiff claims that defendant Palomares used excessive force

8    on plaintiff by "body slamming plaintiff to the pavement face down, causing facial scraping and

9    bruising, along with the damage caused to the heart device implanted in plaintiff's chest, causing

10   the terminals to dislodge from the device."  (ECF No. 1 at 8.)

11       Plaintiff states that defendant's action caused plaintiff great pain from June 19, 2010, to

12   the present.  (Id.)  Plaintiff seeks damages, and declaratory and injunctive relief.  (ECF No. 1 at 3,

13   8-9.)

14   Motion to Compel Discovery

15       Plaintiff seeks access to internal affairs records and personnel records of defendant and

16   other individual peace officers for the purpose of determining whether there is "any evidence of,

17   or complaints of:  racist remarks, false arrest, false statements in reports, false claims of probable

18   cause, inmate complaints, staff complaints, or any other evidence of or complaints of dishonesty

19   by California Department of Corrections and Rehabilitation ('CDCR') officers."  (ECF No. 37 at

20   6.)  Plaintiff relies solely on California law, and styles this request as a Pitchess motion.  See

21   Pitchess v. Superior Court, 11 Cal.3d 531, 535 (1974).  A Pitchess motion is a California

22   procedure by which a criminal defendant may seek a police officer's personnel records.  See, e.g.,

23   City of Santa Cruz v. Municipal Court, 49 Cal.3d 74, 84-85 (1989); Thomas v. On Habeas

24   Corpus, 2008 WL 152224, *4 (E.D. Cal. 2008) ("The purpose of a Pitchess motion is to allow a

25

26   [2]  Plaintiff claims that at the rules violation hearing, plaintiff stated:  "He, Officer Palomares,
     didn't tell me to keep quiet, he told me to shut the fuck. up.  So I told him to shut the fuck up.  We
27   did have an argument go on."  (ECF No. 1 at 6.)  Plaintiff was subsequently found guilty of
     refusing a direct order resulting in the use of force.  (ECF No. 1 at 32, citing Rules Violation
28   Report ("RVR") Log #C-06-10-073, dated June 19, 2010; 40-46.)

1    criminal defendant to discover evidence in the arresting officer's personnel file that is relevant to

2    the defendant's ability to defense against a criminal charge."). <u>Pitchess</u> procedures do not apply

3    in federal court.  Thus, this court construes plaintiff's motion as a motion to compel production of

4    the internal affairs and personnel files.

5         However, plaintiff did not serve a request for production of these records before seeking a

6    court order compelling their disclosure.  Defendant notes that plaintiff served interrogatories and

7    requests for admissions on defendant, but not a request for production of documents.  (ECF No.

8    38 at 5.)  By order filed September 26, 2012, plaintiff was informed that "[i]f disputes arise about

9    the parties' obligations to respond to requests for discovery, the parties shall comply with all

10   pertinent rules including Rules . . . 26 and 37 of the Federal Rules of Civil Procedure. . . .  (ECF

11   No. 27 at 5.)  Rule 37(a) of the Federal Rules of Civil Procedure provides that a motion to compel

12   may be brought when a party fails to respond to a properly propounded discovery request,

13   following a good faith attempt to confer in an effort to obtain a response.  Plaintiff's failure to

14   follow the required procedure defeats his motion.

15        Moreover, discovery closed January 18, 2013.  (ECF No. 27 at 6.)  Plaintiff filed this

16   motion more than six months after the close of discovery, and provided no explanation for the

17   delay.  The <u>Pitchess</u> motion was not preceded by timely discovery requests.[3]

18   ////

19   _____

20   [3]   In addition, it appears that the purpose of this discovery motion was to obtain evidence to
     support plaintiff's theory that he was falsely charged with refusing to obey a direct order, or that
21   defendant made false statements or was dishonest.  Indeed, plaintiff now claims that he
     challenges the denial of due process in the subsequent disciplinary proceeding (ECF No. 37 at 9),
22   and states that he "plans to defend himself from the RVR conviction with allegations of police
     misconduct, including but not limited to false or inaccurate police reports."  (ECF No. 37 at 15.)
23   However, as set forth above, plaintiff's original complaint did not challenge the RVR, but
     expressly stated that plaintiff raised an excessive force claim in violation of the Eighth
24   Amendment.  (ECF No. 1 at 8.)  Although plaintiff also claimed that "the conduct committed
     without need violated [plaintiff's] rights under the 14th Amendment" (ECF No. 1 at 8), such
25   allegation relates to plaintiff's excessive force claim, which is subsumed within the Eighth
     Amendment analysis.  <u>Whitley</u>, 475 U.S. at 312 (in excessive force case, Eighth Amendment
26   serves as the primary source of protection); <u>Murphy v. Dowd</u>, 975 F.2d 435 (9th Cir. 1992)
     (prisoner's Fourteenth Amendment claim concerning conditions of confinement subsumed by
27   Eighth Amendment claim).  In his deposition, plaintiff confirmed that his claim against defendant
     was for excessive force.  (Pl.'s Depo. at 17.)
28

3

1  Accordingly, the motion is denied as untimely, and for plaintiff's failure to comply with

2  Rule 37.[4]

3  Motion for Summary Judgment

4  Defendant moves for summary judgment on the grounds that defendant used only the

5  force necessary to restore discipline and maintain order after plaintiff failed to obey multiple

6  direct orders and plaintiff suffered only de minimis injuries; to the extent that plaintiff claims

7  defendant's orders were unlawful, plaintiff's claim is barred by Heck v. Humphrey, 512 U.S. 477

8  (1994), and Edwards v. Balisok, 520 U.S. 641 (1997); and defendant is entitled to qualified

9  immunity because he did not violate plaintiff's constitutional rights, and a reasonable officer

10  would have believed defendant's actions to be lawful.

11  A.  Legal Standard for Summary Judgment

12  Summary judgment is appropriate when it is demonstrated that the standard set forth in

13  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

14  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

15  judgment as a matter of law." Fed. R. Civ. P. 56(a).[5]

16

17  Under summary judgment practice, the moving party always
bears the initial responsibility of informing the district court of the
basis for its motion, and identifying those portions of "the

18  pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any," which it believes

19  demonstrate the absence of a genuine issue of material fact.

20  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).

21  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove

22  that there is an absence of evidence to support the non-moving party's case." Nursing Home

23

24  [4]  In his deposition, plaintiff also claimed that he had difficulty obtaining medical records.  (Pl.'s
Depo. at 35, 60.)  However,  the record reflects that plaintiff filed no motions to compel

25  discovery, and in his requests for extension of time to oppose the instant motion did not indicate
he was unable to obtain medical records (ECF Nos. 32, 35).

26

27  [5]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he

28  standard for granting summary judgment remains unchanged."

4

1   Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th

2   Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

3   committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

4   burden of production may rely on a showing that a party who does have the trial burden cannot

5   produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

6   should be entered, after adequate time for discovery and upon motion, against a party who fails to

7   make a showing sufficient to establish the existence of an element essential to that party's case,

8   and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

9   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

10  necessarily renders all other facts immaterial."  Id. at 323.

11          Consequently, if the moving party meets its initial responsibility, the burden then shifts to

12  the opposing party to establish that a genuine issue as to any material fact actually exists.  See

13  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

14  establish the existence of such a factual dispute, the opposing party may not rely upon the

15  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

16  form of affidavits, and/or admissible discovery material in support of its contention that such a

17  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

18  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

19  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

20  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

21  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

22  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

23  (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

24  1564, 1575 (9th Cir. 1990).

25          In the endeavor to establish the existence of a factual dispute, the opposing party need not

26  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

27  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

28  trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

1 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

2 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

3 amendments).

4        In resolving a summary judgment motion, the court examines the pleadings, depositions,

5 answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

6 Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

7 255.  All reasonable inferences that may be drawn from the facts placed before the court must be

8 drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

9 are not drawn out of the air, and it is the opposing party's obligation to produce a factual

10 predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

11 Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

12 demonstrate a genuine issue, the opposing party "must do more than simply show that there is

13 some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

14 not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

15 trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

16        By contemporaneous notice provided on April 4, 2013, plaintiff was advised of the

17 requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil

18 Procedure.  (ECF No. 30-1); see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

19 Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

20        B.  Undisputed Facts

21        For purposes of the instant motion for summary judgment, the court finds the following

22 facts undisputed, unless otherwise indicated:

23        1.  At all relevant times, plaintiff was in the custody of the CDCR at Mule Creek State

24 Prison ("MCSP").

25        2.  At all relevant times, defendant Palomares was employed by CDCR as an Institutional

26 Gang Investigator.

27        3.  On June 18, 2010, at approximately 11:45 p.m., inmates in Building 11, Facility C

28 were evacuated due to an inmate death.

4.  Defendant Palomares reported to work to assist in the investigation.

5.  At approximately 11:45 p.m., defendant began to conduct brief interviews with inmates outside the door of Building 11.

6.  Once the interview was completed, inmates were instructed to sit on the basketball court in front of Building 11.

7.  On June 19, 2010, at approximately 1:00 a.m., the inmates sitting on the basketball court began to complain.  Defendant contends plaintiff was the loudest in voicing displeasure; plaintiff contends he was not the loudest, but was the closest inmate to defendant.

8.  Defendant declares he issued plaintiff at least two verbal orders to be quiet so defendant could focus on the investigation.  (ECF No. 30-5 at 14.)  Plaintiff declares defendant didn't tell plaintiff to be quiet -- defendant told plaintiff to "shut the fuck up."  (ECF No. 1 at 6.)

9.  When defendant ordered plaintiff to stop instigating, plaintiff escalated his protests, stating, "This is bullshit, we're not staying out here until you finish asking these stupid ass questions."

10.  Defendant removed plaintiff from the basketball court and isolated him about thirty yards away.

11.  Defendant advised plaintiff that it would be another two hours before the inmates would be allowed to enter the building.

12.  Plaintiff responded by again voicing his displeasure again, stating: "I guarantee you I won't be out here that long. I'm not a betting man, but I'm willing to bet that I won't be out here that long."

13.  Defendant gave plaintiff a direct order to quiet down and to stop inciting.  Plaintiff responded by stating:  "I'm not going to stop talking.  I have my First Amendment rights and if you guys had done your fucking jobs we wouldn't be out here."

14.  Defendant instructed plaintiff to lie prone on the ground and to place his hands on his back.  Plaintiff did not prone out.

15.  Defendant approached plaintiff, who was in a seated position, and placed his left hand on plaintiff's left elbow and his right hand on plaintiff's right shoulder.

7

16. Defendant then used physical force to bring plaintiff to the ground. Defendant pulled plaintiff's left arm back and pushed his upper torso to force plaintiff into a prone position.

17. As plaintiff went to the ground, defendant heard a sound that he believed was plaintiff's head hitting the ground.

18. Once on the ground, defendant ordered plaintiff to place his hands behind his back. Plaintiff complied and defendant applied handcuffs.[6]

19. Once plaintiff was restrained, defendant called Sergeant Moeckly to respond to his location. When Sergeant Moeckly arrived, defendant relinquished custody of plaintiff to Moeckly and resumed inmate interviews.

20. As a member of the Investigative Services Unit, defendant does not generally have access to inmate medical records. Defendant never reviewed plaintiff's medical records.

21. At the time of the incident at issue, plaintiff did not have a medical chrono excusing him from orders to prone out. (Pl.'s Depo at 31-2.)

22. During the relevant period, plaintiff did not have a vest indicating he could not lay prone.[7] (Pl.'s Depo at 31-32.)

////

---

[6] In his deposition, plaintiff claimed that defendant Palomares cuffed plaintiff's hands prior to the alleged use of force. (Pl.'s Depo. at 22:13-24.) The court ordered the parties to brief plaintiff's statement. (ECF No. 39.) Defendant filed a response on December 17, 2013. (ECF No. 40.) Plaintiff did not file a timely reply. As noted by defendant, plaintiff did not dispute the fact that defendant applied handcuffs after the use of force in plaintiff's own statement of facts. (ECF No. 37 at 1.) Undisputed fact No. 18 is consistent with plaintiff's verified complaint, Lt. Williams' report of the incident, defendant's report of the incident, the RVR, the questions plaintiff asked at the RVR hearing, and defendant's sworn testimony. (ECF Nos. 1 at 6, 41, 43; 30-5 at 15; 30-6 at 23-25, 29-30 & 35-40.) In addition, during the deposition, plaintiff also read defendant Palomares' report into the record, which stated: "As I placed [plaintiff] on the ground, I heard what appeared to be his head hitting the ground. I ordered [plaintiff] to put both his hands on his back which he complied. I placed handcuffs on [plaintiff] and assisted him to his feet." (Pl.'s Depo. at 26.) Accordingly, the court finds that plaintiff's single inconsistent statement during his deposition (Pl.'s Depo. at 22:13-24), should be disregarded, and the parties' representations that plaintiff was handcuffed after defendant used force and took plaintiff to the ground should be accepted.

[7] However, plaintiff stated that even if he had been issued a vest, he would not have been allowed to wear it, as inmates were not allowed to bring anything with them during the evacuation. (Pl.'s Depo at 32.)

23.  Plaintiff declares that he told defendant that plaintiff has a heart defibrillator and "tried to explain that [plaintiff] couldn't prone out because of the pressure it would place on [plaintiff's] heart device."  (ECF No. 1 at 43.)  Defendant declares that he was not aware that plaintiff had any medical condition that would prevent defendant from bringing plaintiff to the ground (ECF No. 30-5 at 15).

24.  On July 23, 2010, plaintiff appeared before a senior hearing officer for a disciplinary hearing for a rules violation charging plaintiff with refusing a direct order resulting in the use of force (physical).

25.  Plaintiff pled not guilty to the charge.

26.  At the hearing, plaintiff was allowed to make a statement, and to ask questions of defendant through the hearing officer.  (ECF No. 1 at 6.)  The RVR reflects that plaintiff was allowed to ask questions of his witness, inmate Ortiz, through the hearing officer.  (ECF No. 1 at 44.)  Plaintiff's request to call inmate witnesses Sandoval, Pinnick, Caraves, Salas, Suarez, and Zapien was denied, but the hearing officer noted that these inmates were sitting in the same group as Ortiz.  (ECF No. 1 at 44.)  The hearing officer noted that plaintiff had the same questions and anticipated similar responses, and conceded their testimony.  (Id.)

27.  Plaintiff was found guilty of the charged offense and assessed a thirty-day loss of behavioral credits.

28.  Plaintiff did not file a writ of habeas corpus and the guilty finding has not been overturned.  (Pl.'s Depo. at 55.)

29.  Plaintiff claims that he did not refuse to obey defendant's order because he had a doctor's note stating that he could not lie prone for medical reasons.  Plaintiff made a similar statement in the RVR.  Plaintiff stated, "I didn't disobey any orders. I obeyed the order to strip out. I obeyed the order to go outside. I answered their questions. I obeyed the order to sit on the basketball court. I obeyed the order to move."  (Pl.'s Depo. 30:5-12; ECF No. 1 at 6, 43.)

30.  Plaintiff had an automated implantable cardioverter defibrillator ("AICD") implanted in February 2006.

////

9

31.  If an inmate has a physical limitation due to a medical condition, medical staff would complete a medical chrono documenting that condition and limitation. The Inmate Medical Procedures and Policies specify that if an inmate cannot lie in a prone position, this limitation shall be indicated on a CDCR Form 7410, Comprehensive Accommodation Chrono.  Copies of the CDCR Form 7410 are filed in the inmate's Unit Health Record, placed in his Central File, given to the inmate, provided to the inmate's housing unit, provided to the assigned correctional counselor, and provided to the Inmate Assignment Office.

32.  Following the implant of the AICD, on February 24, 2006, the only recommended limitations were that plaintiff not engage in strenuous activity for 7 to 10 days and that he not swim, lift weights, or golf for 3 months.  (ECF No. 30-5 at 27.)  On March 8, 2006, Dr. Srivatsa, who implanted the AICD, advised that plaintiff should not play contact sports.  (ECF No. 30-5 at 33.)

33.  There is no medical reason that a patient with an AICD could not lie on their stomach on the ground.[8]  (ECF No. 30-5 at 19.)

34.  A direct blow to the chest near an AICD may affect its functioning.  However, there is no medical evidence that Grant's AICD was damaged or not functioning properly after the incident with defendant on June 19, 2010.

35.  Plaintiff's medical records show that he was seen by Physician Assistant Richard Kubota on June 30, 2010.  (ECF No. 30-5 at 24-25.)  Kubota, interpreting tests performed by Senior Pacer Technician Barnes, noted that Grant's AICD was functioning normally.  (ECF Nos. 30-5 at 24-25; 29.)

36.  Kubota also noted that tests of plaintiff's AICD showed much improvement since his last appointment.  (ECF No. 30-5 at 24.)

---

[8]  In his statement of undisputed facts, plaintiff contends that the declaration of S. Heatley, M.D., Chief Medical Executive at MCSP, "was prepared without impartial and independent expert opinion, but was prepared for [defendant] by CDCR employees and/or by personnel contracted to collaborate with [defendant].  (ECF No. 37 at 4-5.)  However, plaintiff cites to no evidence to support his statement, and failed to provide medical records or evidence to refute Dr. Heatley's declaration.

37.  Dr. Heatley declares that "[h]ad the terminals on [plaintiff's] AICD been damaged on June 19, 2010, . . . the tests performed on June 30, 2010, would have shown that the AICD was not functioning normally."  (ECF No. 30-5 at 19.)

38.  The medical report of injury completed on June 19, 2010, following the incident herein, reflects that plaintiff suffered abrasions/scratches to his head and arm.  (ECF No. 30-6 at 21.)  No other injuries are noted on this form.  Plaintiff's medical records show that there was no damage to his AICD as of June 30, 2010.[9]

39.  On September 15, 2011, plaintiff was admitted to the San Joaquin General Hospital to have his AICD generator and RV lead replaced.

40.  Plaintiff's medical records note that the lead had been recalled and was defective.[10]

41.  Plaintiff's medical records also note that his AICD was nearing the Elective Replacement Indicator (ERI).

42.  Subsequent follow-up visits showed that plaintiff's AICD was generally functioning normally.[11]  (ECF Nos. 30-6 at 4-5; 15-16.)  Plaintiff's medical records note that plaintiff had some firing of his defibrillator, which was usually associated with physical exertion.  (ECF No. 30-6 at 4; 15-16.)

43.  A progress note dated March 21, 2012, states that x-rays taken earlier showed a possible fractured lead.  (ECF No. 30-6 at 8.)  The progress note that plaintiff was taken to the

_____

[9]  In his statement of undisputed facts, plaintiff appears to claim that defendant damaged a lead to the AICD.  (ECF No. 37 at 4.)  However, plaintiff submitted no medical evidence to support this claim.  Plaintiff also claims that "breaking the human skin open and damaging a lead to an internal medical device is severe in nature" (id.), but provides no medical evidence or legal authority to support this statement.

[10]  For example, on September 24, 2012, Dr. Chien noted that plaintiff "had a generator change and lead revision because of Sprint Fidelis lead which has high incidence of failure."  (ECF No. 30-6 at 4.)

[11]  In connection with undisputed facts 42 and 43, plaintiff again claims "this issue" was "prepared without impartial and independent expert opinion, but was prepared for [defendant] by CDCR employees and/or by personnel contracted to collaborate with [defendant]."  (ECF no. 37 at 5.)  However, the documents supporting these two undisputed facts are medical records from plaintiff's medical file.  Plaintiff has submitted no contrary medical records or other evidence to refute such facts.

11

1    cath lab, and after visual inspection of the pacemaker, AICD and the leads, it was found that the

2    fractured lead was a lead that had been replaced but not removed.  (Id.)  The leads and the

3    pacemaker generator were all functioning normally.  (Id.)

4          C.  Excessive Force Claim

5          The court turns now to plaintiff's claim that the force used by defendant during the June

6    19, 2010 incident was excessive.

7                i.  Use of Force Standards

8          The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S.

9    Const. amend. VIII.  The "unnecessary and wanton infliction of pain" constitutes cruel and

10   unusual punishment prohibited by the United States Constitution.  Whitley v. Albers, 475 U.S.

11   312, 319 (1986).  Neither accident nor negligence constitutes cruel and unusual punishment, as

12   "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the

13   conduct prohibited by the Cruel and Unusual Punishments Clause."  Id.

14         What is needed to show unnecessary and wanton infliction of pain "varies according to

15   the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992)

16   (citing Whitley, 475 U.S. at 320).  Deference is to be given to the quick decisions officers must

17   make when responding to a confrontation with "riotous inmates."  Whitley, 475 U.S. at 320-22.

18   A deferential standard applies even in the case of "a lesser disruption," so long as it is necessary

19   for guards to use force to keep order.  Hudson, 503 U.S. at 6.  In the case of resistance, the

20   determinative question is "whether force was applied in a good faith effort to maintain or restore

21   discipline or maliciously and sadistically for the purpose of causing harm."  Id. at 7.

22         It is well established that "whenever prison officials stand accused of using excessive

23   physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry

24   is that set out in Whitley, i.e., whether force was applied in a good-faith effort to maintain or

25   restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 6-7.  A

26   prisoner is not required to show a "significant injury" to establish that he suffered a sufficiently

27   serious constitutional deprivation.  Id., 503 U.S. at 9-10.

28   ////

1    The Ninth Circuit has relied on the <u>Hudson</u> factors in determining whether an officer's

2    application of force was applied in a good faith effort to restore discipline.  <u>Martinez v. Stanford</u>,

3    323 F.3d 1178, 1184 (9th Cir. 2003).  These factors are: 1) the extent of the injury suffered by an

4    inmate; 2) the need for application of force; 3) the relationship between that need and the amount

5    of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts

6    made to temper the severity of a forceful response.  <u>Id.</u>  From these factors, inferences may be

7    drawn as to whether the use of force could plausibly have been thought necessary, or instead

8    evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a

9    knowing willingness that it occur.  "Equally relevant are such factors as the extent of the threat to

10   the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of

11   facts known to them, and any efforts made to temper the severity of a forceful response."

12   <u>Whitley</u>, 475 U.S. at 321.

13        Thus, there is no Eighth Amendment violation if "force was applied in a good-faith effort

14   to maintain or restore discipline."  <u>Hudson</u>, 503 U.S. at 7.  Courts accord wide-ranging deference

15   to prison administrators in the exercise of policies and practices that in their judgment are needed

16   to preserve internal security, safety and discipline.  <u>Whitley</u>, 475 U.S. at 322-23.  The infliction of

17   pain in the course of implementing prison security measures does not amount to cruel and unusual

18   punishment even though it may appear, in hindsight, the degree of force was unreasonable.  <u>Id.</u> at

19   319.  An allegation of cruel and unusual punishment should proceed to trial only if the evidence

20   supports a reliable inference that the prison official intended to inflict pain.  <u>Id.</u> at 322.

21            ii.  <u>Analysis</u>

22        Defendant seeks summary judgment on the grounds that (1) he acted in good faith to

23   restore order and maintain discipline, (2) he used only the force necessary to restrain plaintiff

24   after he refused a direct order, (3)  the evidence demonstrates that plaintiff only suffered de

25   minimis injury, and (4) plaintiff's medical condition did not prevent him from complying with

26   defendant's order to lie prone.

27   ////

28   ////

1    Despite being granted two extensions of time in which to file an opposition to defendant's

2  motion for summary judgment (ECF Nos. 33 & 36),[12] plaintiff did not file an opposition, or

3  points and authorities in opposition, and did not submit medical records or other evidence to

4  support his claim.  Rather, plaintiff filed a five page document styled, "Plaintiff's Statement of

5  Undisputed Facts and Deny Those Facts That [Are] Disputed," and a 21 page document styled,

6  "Points and Authorities in Support of Motion for Discovery of Correctional Officers' Files and

7  Records."  (ECF No. 37.)  In these unverified filings, plaintiff did not substantively address

8  defendant's arguments in support of the motion for summary judgment.  (Id., *passim*.)

9    Moreover, plaintiff did not submit his own declaration.  Despite plaintiff's reference to

10  numerous witnesses to the use of force incident, plaintiff provided no declarations or affidavits

11  from such witnesses.

12    However, plaintiff was a percipient witness to the events at issue here.  Therefore, the

13  court addressed plaintiff's issues with defendant's statement of undisputed facts, as set forth

14  above, and now considers plaintiff's verified complaint, attached exhibits, and his deposition in

15  addressing defendant's motion.

16    It is undisputed that plaintiff was verbally expressing his displeasure, along with other

17  inmates, while evacuated to the yard on the night of June 18, 2010.  Plaintiff does not dispute that

18  he was removed from the group of inmates to the center of the basketball court (Pl.'s Depo. at

19  18.)  Plaintiff does not dispute that he did not prone out when ordered to do so by defendant,

20  although plaintiff does not characterize his failure to prone out as a refusal to obey defendant's

21  order.  Thus, the undisputed facts indicate defendant was reacting to a situation created by

22  plaintiff, who concedes that he was verbally expressing displeasure, that he did not stop

23  complaining when defendant allegedly told him to "shut the fuck up," and that he engaged in an

24  argument with defendant.  Plaintiff adduced no evidence that defendant used force simply to

25  cause plaintiff harm.

26  _____

27  [12]  In his motions for extension of time, plaintiff did not indicate he would seek to discover personnel records or internal affairs records, or that he would seek leave to amend the complaint to challenge the 2010 RVR.  Rather, plaintiff asked for additional time to research and respond to

28  defendant's motion for summary judgment.  (ECF Nos. 32; 35.)

1    Defendant declared he was worried about plaintiff "possibly inciting the other inmates on

2    the basketball court" and first removed plaintiff from the basketball court "in an attempt to

3    maintain institutional security and safety." (ECF No. 30-5 at 14.)  Defendant declared that he

4    gave plaintiff a direct order to lie prone on the ground, and plaintiff did not comply.  (ECF No.

5    30-5 at 15.)  After defendant placed his hands on plaintiff, defendant again ordered plaintiff to lay

6    prone, but plaintiff did not comply.  (Id.)  Defendant declared that:

7
           In the correctional setting inmates greatly outnumber correctional
           officers and staff.  For this reason, it is imperative for correctional
8          officers to maintain order and discipline.  If order and discipline are
           threatened by an inmate's behavior, correctional officers must act
9          immediately to end that behavior before it escalates out of control.

10   (ECF No. 30-15 at 14.)  Plaintiff adduced no evidence contradicting defendant's security

11   concerns.  Indeed, plaintiff confirmed that there were several dozen inmates on the basketball

12   court. (ECF No. 1 at 5.)

13   In his verified complaint, plaintiff claims that defendant "body slammed" plaintiff.  In his

14   deposition, plaintiff stated that defendant "slammed" plaintiff on his "face and chest."  (Pl.'s

15   Depo. at 15.)  Plaintiff said that defendant "slammed me on the ground after I was sitting down."

16   (Pl.'s Depo at 17.)  However, in his statement of undisputed facts, plaintiff does not dispute that

17   when defendant approached him, plaintiff was in a seated position, or that defendant pulled

18   plaintiff's left arm back and pushed plaintiff's upper torso to force plaintiff into a prone position.

19   (ECF No. 37 at 1-2.)  In the statement of facts portion of plaintiff's unverified discovery motion,

20   plaintiff now claims he tried to comply with defendant's prone out order by attempting to lay on

21   his right side. (ECF No. 37 at 11.)  However, in his complaint, and at the RVR hearing, plaintiff

22   stated that he "just told" defendant that plaintiff could lay on his side but not his stomach.  (ECF

23   No. 1 at 6.)

24   Nevertheless, in his discovery motion, plaintiff again confirms that defendant placed his

25   right hand on plaintiff's right shoulder, and then placed his left hand on plaintiff's left elbow.

26   (Id.)  Plaintiff then states that defendant, "in a malicious[] and sadistic[] manner[,] applied severe

27   brutal physical force pulling plaintiff's left elbow back while at the same time pushing plaintiff's

28   upper torso forward moving plaintiff from his attempted laying on his right side to a prone

15

1    position in [a] matter of a fraction of a second."  (ECF No. 37 at 11.)  Despite plaintiff's new and

2    unverified claim that defendant used force in a malicious and sadistic manner, plaintiff now

3    concedes it was a very brief use of force.

4           Plaintiff also claims that he told defendant that plaintiff had a defibrillator and could not

5    prone out.  However, because of plaintiff's failure to lie prone, defendant was  required to use

6    some force to gain control of plaintiff given the undisputed security concerns.  Although plaintiff

7    was forced to the ground from a seated position and hit his head, it does not appear that defendant

8    used more force than was necessary under the circumstances.  The record demonstrates that there

9    was a reasonably perceived threat that plaintiff might incite other inmates to act out, and the

10   undisputed facts reflect that plaintiff escalated the incident from verbally expressing his

11   displeasure to arguing with defendant, to failing to comply with defendant's order.  Plaintiff

12   provided no evidence to suggest the force was not applied in good faith.  Indeed, the record

13   demonstrates that defendant first attempted to get plaintiff to quiet down and attempted to temper

14   the need for force by ordering plaintiff to lie prone before resorting to the use of force.

15          The medical records submitted by defendant reflect that plaintiff sustained an abrasion or

16   scratch to his head and arm, but no other injuries.  Plaintiff claims in his complaint that he

17   sustained damage to his AICD or to the lead to the AICD, but he submitted no medical evidence

18   to support such a claim, or to refute defendant's evidence that plaintiff's lead was subsequently

19   replaced because it was defective and subject to recall.  Plaintiff submitted no medical evidence

20   to refute defendant's evidence that plaintiff's AICD was working properly on June 30, 2010, or to

21   refute Dr. Heatley's opinion that had plaintiff's AICD terminals been damaged on June 19, 2010,

22   the AICD would not have been working properly on June 30, 2010.  Plaintiff provided no

23   evidence to suggest that defendant acted with malice or had a sadistic intent to harm plaintiff

24   rather than to bring plaintiff under control.

25          At the RVR hearing, defendant denied plaintiff said anything about a defibrillator, and in

26   response to plaintiff's question, "Did I tell you I couldn't lay on my stomach but I could lay on

27   my side?" defendant responded:  "No.  I think you said something like, I can't."  (ECF No. 1 at

28   6.)  However, even if plaintiff told defendant that plaintiff had a defibrillator, plaintiff adduced no

16

1   evidence demonstrating that having a defibrillator precluded him from lying on his stomach.

2   Despite plaintiff's claim that he had a doctor's note stating he could not lie prone for medical

3   reasons (Undisputed Fact 29; Pl.'s Depo. at 30), plaintiff submitted no such medical record.[13]

4   Plaintiff concedes that he did not have a chrono excusing him from having to prone out.

5         Moreover, Dr. Heatley declares that there is no medical reason that a patient with an

6   AICD could not lie on his stomach on the ground.  (ECF No. 30-5 at 19.)  Plaintiff adduced no

7   evidence to the contrary.  Thus, even assuming plaintiff informed defendant about the

8   defibrillator, plaintiff was not excused from complying with defendant's order.

9         Under the circumstances, plaintiff's bald assertion that he was "body slammed" to the

10  ground is insufficient, without more, to create a genuine dispute of material fact that defendant

11  used excessive force under Hudson.  Similarly, plaintiff's unverified claim that defendant's use of

12  force was done in "a malicious[] and sadistic[] manner[,]" (ECF No. 37 at 11), without more, fails

13  to create a material dispute of fact.  Unlike the facts in Hudson, defendant did not strike blows at

14  plaintiff's mouth, eyes, chest, and stomach.  Construing the evidence submitted in the light most

15  favorable to plaintiff, plaintiff has established, at best, that in response to defendant's undisputed

16  security concerns, defendant forcefully pushed or "slammed" plaintiff into a prone position from

17  a seated position causing an abrasion or scratch to plaintiff's face and arm.  Plaintiff's injuries

18  support the view that the force defendant used in response to his undisputed security concerns

19  was not excessive.  Thus, plaintiff has failed to raise a triable issue of fact that defendant used

20  excessive force against him in violation of the Eighth Amendment.  See, e.g., Ackley v. Carroll,

21  2011 WL 2160896, *7-8 (E.D. Cal. June 1, 2011) (pushing the plaintiff against a wall and kicking

22  his leg was a de minimis use of force not actionable under the Eighth Amendment); Moore v.

23  Machado, 2009 WL 4051082, *5 (N.D. Cal. Nov. 20, 2009) (throwing the plaintiff against a wall

24  ////

25  
26  [13]  However, even if plaintiff had submitted such a medical record, plaintiff failed to adduce
    evidence refuting defendant's declaration that he does not generally have access to inmate
27  medical records, that he has never reviewed plaintiff's medical records, and that at the time of the
    incident, he was not aware plaintiff had any medical condition that would prevent defendant from
28  taking plaintiff to the ground (ECF No. 30-5 at 15).

1    and bending or twisting his arm was a de minimis use of force not actionable under the Eighth

2    Amendment).

3         For all of these reasons, the court finds that plaintiff failed to refute defendant's evidence

4    that he applied force to maintain or restore discipline, and therefore defendant is entitled to

5    summary judgment.

6    <u>Alternative Grounds</u>

7         Because defendant is entitled to summary judgment, the court need not address

8    defendant's alternative grounds for relief.

9    <u>Conclusion</u>

10        Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to compel discovery

11   (ECF No. 37) is denied; and

12        IT IS RECOMMENDED that defendant's motion for summary judgment (ECF No. 30) be

13   granted.

14        These findings and recommendations are submitted to the United States District Judge

15   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

16   after being served with these findings and recommendations, any party may file written

17   objections with the court and serve a copy on all parties.  Such a document should be captioned

18   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

19   objections shall be served and filed within fourteen days after service of the objections.  The

20   parties are advised that failure to file objections within the specified time may waive the right to

21   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

22   Dated:  January 8, 2014

23

24   /gran2302.msj                                    KENDALL J. NEWMAN
                                                      UNITED STATES MAGISTRATE JUDGE
25

26

27

28

18